CHARLES ALPERSON, Appellant, *v.* JOSEPH AJELLO, Respondent.

Supreme Court, Appellate Term, First Department, October Term — Filed November, 1922.

**Negligence — collision of automobiles — when judgment in favor of defendant will be reversed.**

Where the evidence in an action to recover damages for personal injuries resulting from a collision in broad daylight between plaintiff's taxicab and defendant's automobile, each driven by the owner, establishes not only that the plaintiff was without fault but that the sole cause of the accident was defendant's negligence and his violation of traffic regulations, a judgment in defendant's favor, after a trial by the court without a jury, will be reversed and a new trial ordered.

APPEAL by plaintiff from a judgment of the Municipal Court of the city of New York, borough of Manhattan, fifth district, in favor of defendant, after a trial by a judge without a jury.

*Robert J. Blum,* for appellant.

*William N. Loew,* for respondent.

*Per Curiam.* This action was brought to recover damages resulting from a collision between a taxicab owned and driven by plaintiff and an automobile owned and driven by defendant. Two passengers in plaintiff's automobile sue for personal injuries, and all three cases were tried as one.

The accident happened in broad daylight at five-thirty P. M. on June ninth. The automobiles came together at a point approximately southeast and immediately adjacent to the statue of Commerce in Central Park. The "west drive" of Central Park runs from Columbus Circle northward. The diagrams in evidence and the testimony of the various parties establish without contradiction that at a point several hundred yards north of its beginning it is met almost at right angles by a driveway from the east, which, however, does not cross the west drive. The statue of Commerce stands substantially in the center of an imaginary circle enfolding this large intersection. The statue is some forty-one feet from the west curb of the west drive, and as is said in the record " some 43 feet from the east curb." This statement, however, is quite valueless for the purpose of deciding the issues raised by the instant case because at the point of measurement from the east curb to the statue a wide curve is taken by the curb to meet the south curb of the intersecting road. If the existence of this intersecting road were disregarded and the west drive supposed to be uninterrupted and thus have a continuous eastern curb line, the statue would stand very nearly on the eastern curb line, or in any event far over into that part of the roadway which would be used by the traffic going north. At the time of the accident there was no police regulation of the traffic at this point. It was testified that the bulk of the traffic moving north went to the left or west of the statue, but that since the accident a traffic regulation has required it to pass to the east thereof.

Plaintiff was proceeding north and intended to pass to the west of the statue which was concededly not only lawful, but, as proved, was the course adopted by most of the traffic. Defendant was driving west on the cross driveway and intended to turn south on the west drive. He testified that when reaching the west drive he stopped close to the north curb of the cross drive to permit south-bound traffic to pass (a statement which it seems to us has little if any significance) and then proceeded to turn around the statue at a distance of ten feet therefrom. This, in view of the position of the statue, manifestly brought him facing southward on that part of the west drive which on familiar traffic regulations and the general rules of the road was appropriated to north-bound traffic. He claims not to have observed plaintiff's taxicab until

it was within fifteen feet of him, though why this should have been or how it could occur if he was watchful is not explained. In any event he had turned at an intersection without going fully around the middle point thereof as required by the traffic regulations, had come onto the wrong side of the driveway, and finally when a collision seemed imminent turned to the east, *i. e.,* his left, and thus struck plaintiff's taxicab, which, so far as the record discloses, was at that time standing still.

From this narrative it appears to me to be clear that defendant turned at this intersection too short; that he then proceeded upon the wrong side of the road, and when a collision seemed imminent, rendered it inevitable by practically turning into plaintiff's vehicle which was either approaching very slowly or had actually stopped.

Since plaintiff was without fault and the accident seems to have been caused entirely by violation of regulations and negligence on the part of the defendant, the judgments must be reversed and new trial ordered, with ten dollars costs in each case to appellant to abide the event.

All concur; present, GUY, BIJUR and MULLAN, JJ. ·

*Judgments reversed.*